UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| RILEY J. KUHN,<br><br>    Plaintiff,<br><br>v.<br><br>CREDITFORHOMELOANS.COM, LLC,<br><br>    Defendants. | CIVIL COMPLAINT<br><br><br>CASE NO. 4:23-cv-00308<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW comes RILEY J. KUHN ("Plaintiff"), by and through the undersigned, complaining as to the conduct of CREDITFORHOMELOANS.COM, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* as well as the Minnesota Credit Services Organization Act ("MCSOA") under Minn. Stat. § 332.52 *et seq.*, stemming from Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 47 U.S.C §227, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant resides in the Eastern District of Texas, conducts business in the Eastern District of Texas and a substantial

portion the events or omissions giving rise to the claims occurred within the Eastern District of Texas.

## PARTIES

4. Plaintiff is a consumer over 18 years of age residing in Saint Cloud, Minnesota.

5. Defendant is a credit repair organization that claims offer consumers a suite of services designed to improve their credit score so that they can purchase the home of their dreams. Defendant is a limited liability organized under the laws of the state of Texas with its principal place of business located at 850 Central Parkway East, Suite 200, Plano, Texas 75074.

6. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

7. In approximately December of 2021, Plaintiff was looking to purchase a home but had issues on his credit impacting his ability to receiving financing.

8. Plaintiff was subsequently referred to Defendant.

9. Defendant represented to Plaintiff that it would get several negative items removed from his credit report and would similarly get his addresses updated and corrected, thus improving Plaintiff's credit history and assisting him in qualifying for a mortgage.

10. Defendant guaranteed that Plaintiff would enjoy improved credit and would be able to qualify for a mortgage after using Defendant's services.

11. Wanting to take advantage of the represented services and results, Plaintiff agreed to use Defendant's services and entered into a contract with Defendant for the provision of the same.

12. Over the first several months, Plaintiff paid over $1200.00 to Defendant for its provision of services; however, Defendant failed to deliver any improvement to Plaintiff's credit history or even to have his address information corrected, despite having been paid to do just that.

13. Defendant charged Plaintiff's for its services on an upfront basis, before performing any services for Plaintiff, and attempts to justify its unlawful conduct through various contractual disclaimers.

14. When Plaintiff would ask Defendant why no results were being delivered, Defendant provided Plaintiff the runaround attempting to justify why it had charged Plaintiff $1200.00 just to fail to deliver any results or services.

15. For the following months, Plaintiff persisted in making his payments to Defendant for its services.

16. However, despite Plaintiff's payments, Defendant has failed to successfully deliver the represented credit repair services.

17. Plaintiff would inquire with Defendant about what it was doing with the money he was paying, and Defendant consistently provided Plaintiff the runaround and attempted to convince Plaintiff to pay more to Defendant so that the represented results would be delivered faster.

18. Plaintiff's credit score enjoyed no improvement despite making thousands in payments to Defendant.

19. When Plaintiff attempted to cancel his agreement and requested a refund, Defendant advised that Plaintiff had to pay certain "dispute" charges in order to receive a refund for services Defendant never actually performed.

20. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

21. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments he made to Defendant, further out of pocket expenses, as well as numerous violations of his state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

22. Plaintiff repeats and realleges paragraphs 1 through 21 as though fully set forth herein.

23. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

24. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

   a. **Violations of CROA § 1679b(a)**

25. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

26. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide

Plaintiff. In order to get Plaintiff to agree to utilize Defendant's services, Defendant represented that its services would result in negative items being removed from his credit report and that Plaintiff would enjoy improved credit; however, Defendant completely failed to follow through on these promises or the services it represented it would perform for Plaintiff. Defendant further represented that its services would result in Plaintiff qualifying for a home; however, Defendant's services did not have such benefit.

27. Defendant further violated the above provisions of the CROA through its generally deceptive and fraudulent conduct in making certain representations regarding the efficacy and nature of its services, yet cutting against those representations through contractual language contradicting the representations made to induce consumers into utilizing Defendant's services.

28. Further, Defendant violated the CROA when it deceptively represented to Plaintiff that its disputes would be responded to by the credit reporting agencies. Inherent with Defendant's representations was the notion that there would be an obligation for an investigation to be triggered by Defendant's submission of a credit dispute on Plaintiff's behalf. However, pursuant to 12 C.F.R. § 1022.43(b)(2), the credit reporting agencies are under no obligation to respond to disputes submitted by credit repair organizations like Defendant.

29. Defendant further violated the CROA through the runaround it would provide Plaintiff when he would request information on what Defendant was doing for Plaintiff. Defendant engaged in this deceptive conduct in an effort to convince Plaintiff that its services would ultimately be effective; however, Defendant had failed to deliver any results.

30. Additionally, Defendant violated the CROA through its unfair and deceptive conduct in subjecting Plaintiff to an additional charge upon his cancellation. Consumers have an absolute

right to cancel their agreements with credit repair organizations, and Defendant sought to collect further sums from Plaintiff to exercise her basic rights.

    b.  **Violations of CROA § 1679b(b)**

31. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

32. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Despite Plaintiff paying Defendant for various services, Defendant completely failed to perform the services it represented it would perform while simultaneously retaining Plaintiff's payments for fees. Further, Defendant's contract charges over $600.00 entirely for set-up related services, prior to the *complete* performance of the services Defendant agrees to perform. Defendant cannot contract around the CROA's prohibition on charging consumers before the complete performance of services.

    c.  **Violation of CROA § 1679d(b)(4)**

33. The CROA, pursuant to 15 U.S.C. § 1679d(b)(4), requires a CRO to provide a notice of a consumer's right to cancel their agreement in immediate proximity to the space reserved for the consumer's signature on the contract.

34. Defendant violated the above provision of the CROA through its failure to include the requisite disclosure regarding Plaintiff's right to cancel in immediate proximity to **the space** reserved for his signature on the contract. Defendant's contract required Plaintiff to assent to the services prior to being provided the disclosure of the right to cancel. As such, Defendant's disclosure of the right to cancel is in the wrong part of its agreement with Plaintiff.

    **d. Violations of CROA § 1679f(b)**

35. The CROA, pursuant to 15 U.S.C. § 1679f(b), provides that "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

36. Defendant violated § 1679f(b) through its attempts to obtain a waiver of Plaintiff's rights afforded under the CROA. Defendant's contract attempts to justify its retention of fees prior to the *complete* performance of the services it represents it will perform for consumers in an effort to justify its conduct otherwise in violation of the federal laws applicable to its business. Defendant further guaranteed certain results orally, yet the contract provides that no oral representations supersede the language of the contract. In so doing, Defendant had attempted to attain Plaintiff's wavier of the protections against fraudulent and deceptive representations inducing consumers to use Defendant's services. Further, Defendant's contract attempts to shift the fees for any litigation between the parties to the "prevailing party" – however, Defendant would never be entitled to its fees from a consumer seeking to vindicate rights under federal consumer protections statutes, and Defendant's fee-shifting clause is in contravention of the CROA's fee-shifting nature.

WHEREFORE, Plaintiff, RILEY J. KUHN, respectfully requests that this Honorable Court enter judgment in his favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

    b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

    c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

    d.  Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

    e.  Awarding any other relief as the Arbitrator deems just and appropriate.

<b><u>COUNT II – VIOLATIONS OF THE MINNESOTA CREDIT SERVICES ORGANIZATION ACT</u></b>

37. Plaintiff restates and realleges paragraphs 1 through 34 as though fully set forth herein.

38. Plaintiff is a "buyer" as defined by Minn. Stat. § 332.52, subd. 2.

39. Defendant is a "credit services organization" as defined by Minn. Stat. § 332.52, subd. 3(a).

    a.  **Violation of MCSOA § 332.53**

40. The MCSOA, pursuant to Minn. Stat. § 332.53, provides that "[a]ny attempt by a credit services organization to have a buyer waive rights provided under [the MCSOA] is a violation of [the MCSOA]."

41. Defendant violated Minn. Stat. § 332.53 through its improper attempt to obtain a waiver of Plaintiff's rights provided under the MCSOA in much the same way it violated § 1692f(b) of the CROA.

    b.  **Violation of MCSOA § 332.56**

42. The MCSOA, pursuant to Minn. Stat. § 332.56, subd. 1(4), prohibits a credit services organization from "mak[ing] or us[ing] any untrue or misleading representations in the offer or sale of the services of a credit repair organization or engage, directly or indirectly, in any act, practice, or course of business that operates or would operate as fraud or deception upon any person in connection with the offer or sale of the services of a credit services organization." Further, § 332.56, subd. 1(1), a credit service organization cannot "charge or receive any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for the buyer."

43. Defendant violated the above portions of the MCSOA in much the same way it violated §§ 1679b(a)(3)-(4) & 1679b(b) of the CROA.

### c. Violations of MCSOA § 332.58

44. The MCSOA, pursuant to Minn. Stat. § 332.58, provides a number of requirements for contracts between CSOs and consumers, as well as a the requirements for notices of cancellation and a consumer's right to cancel within **5** days of signing a contract for services.

45. Defendant violated § 332.58 subd. 1 through its failure to contain the required information, disclosures, and statements in its contract with Plaintiff. Defendant further violated § 332.58 subd. 2 through its failure to provide the proper disclosure regarding a consumer's right to cancel in the manner required, and further by only providing consumer's 3 days to cancel a contract when Minnesota law provides 5 days for such cancellation.

WHEREFORE, Plaintiff, RILEY J. KUHN, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Minn. Stat. § 332.60;

c. Awarding Plaintiff punitive damages pursuant to Minn. Stat. § 332.60;

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Minn. Stat. § 332.60; and

e. Awarding any other relief as the Arbitrator deems just and appropriate.

Dated: April 10, 2023

Respectfully submitted,

s/ Nathan C. Volheim (Lead Attorney)
Nathan C. Volheim, Esq. #6302103
*Counsel for Plaintiff*

Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com